# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2013

No. 12-50629

Lyle W. Cayce
Clerk

RUBEN DARIO ORTEGA, Individually and as Next Friends of A.O., a minor child; NANCY ORTEGA, Individually and as Next Friends of A.O., a minor child,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA; JANET NAPOLITANO, in her capacity as the current Secretary of Department of Homeland Security; MICHAEL CHERTOFF, in his capacity as the former Secretary of Department of Homeland Security; ERIC H. HOLDER, JR., in his capacity as the current Attorney General of the United States of America; MICHAEL MUKASEY, in his capacity as the former Attorney General of the United States of America; THOMAS SNOW, in his capacity as the former Director of the Executive Office of Immigration Review; KEVIN A. OHLSON, in his capacity as the former Director of the Executive Office of Immigration Review; JOHN T. MORTON, in his capacity as the current Director of Immigration and Customs Enforcement; RICHARD T. JOHNSON, in his capacity as the former Director of Immigration and Customs Enforcement; JAMES T. HAYES, JR., in his capacity as the Director of the Immigration and Customs Enforcement Office of Detention and Removal; ROBERT E. JOLICOUER, in his capacity as the Director of the Immigration and Customs Enforcement El Paso Office; TEAM HOTEL I; ICE DOES 1–15; CBP DOES 1–15,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CV-401

No. 12-50629

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

PER CURIAM:[*]

The issue on appeal is whether the district court erred in dismissing Appellants' claims on the ground that the claims were time-barred under the statute of limitations of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401(b). For the reasons stated below, we AFFIRM.

I.

Appellants are Ruben Dario Ortega and Nancy Ortega, who are husband and wife. Mr. Ortega is a Mexican national and was lawfully present in the United States as a temporary resident when federal agents erroneously deported him to Mexico. A warrant of removal was issued against Mr. Ortega, for reasons unknown to both the Ortegas and the Government. Apparently based on this warrant of removal, on May 28, 2008, United States federal agents entered the Ortegas' gated and locked residence in El Paso, Texas. According to the Ortegas, federal agents stated that they had a warrant and that Mr. Ortega had been ordered deported. The agents took Mr. Ortega to the International Bridge between El Paso and Ciuaded Juarez, Mexico, and told him to walk across. Mr. Ortega spent the next 18 months in Ciudad Juarez, after which time he was re-admitted to the United States under a waiver request.

During the time that Mr. Ortega was in Ciudad Juarez, Mrs. Ortega submitted a Freedom of Information Act (FOIA) request to U.S. Citizenship and Immigration Services (USCIS). On May 15, 2009, Mrs. Ortega received 17 pages of documents in response to her FOIA request. The Ortegas state that these documents put them on notice for the first time that there had never been a removal order issued against Mr. Ortega, and thus that his removal to Mexico

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50629

was erroneous. The Government concedes on appeal that there was never a removal order.

On February 22, 2011, the Ortegas filed a notice of claim with USCIS under the FTCA. USCIS denied the claim on the ground that the statute of limitations had run. The Ortegas filed suit in federal district court.[1] The Government moved to dismiss under Rule 12(b)(1), which motion the district court granted, also on the basis that the statute of limitations had run. In particular, the district court concluded that "[b]ecause Plaintiffs were aware that [Mr. Ortega] had been injured and who inflicted the injury as of May 28, 2008, their claims accrued on that date." The court stated that the discovery rule did not apply because "Plaintiffs became abundantly aware of [Mr.] Ortega's injury on May 28, 2008 and had enough facts about the injury's cause to investigate their legal rights," and thus "they could have subsequently discovered there was no deportation order and representations to the contrary were therefore false." Accordingly, because more than two years had passed between Mr. Ortega's deportation on May 28, 2008, and the Ortegas' filing an administrative claim on February 22, 2011, the Ortegas' claims were time-barred under the FTCA. The Ortegas appeal this limitations issue.

## II.

We review a district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction *de novo*. *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

---

[1] This suit was timely filed, meaning within six months of USCIS's decision, as required under 28 U.S.C. § 2401(b). There is no dispute that the Ortegas met this deadline; the only dispute is over the timing of their February 2011 claim with USCIS.

The FTCA's statute of limitations, codified at 28 U.S.C. § 2401(b), provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." The Ortegas do not dispute that Mr. Ortega was arrested and deported on May 28, 2008, nor do they dispute that they filed their administrative claim under the FTCA more than two years later on February 22, 2011. They argue only that under the discovery rule their claims accrued later on May 15, 2009 (less than two years before the filing of their administrative claim), because that is when they learned that federal agents' removal of Mr. Ortega was not conducted pursuant to a valid removal order. Accordingly, the salient issue before us is when the statute of limitations began to run—that is, when the Ortegas' causes of action accrued.

As a general rule, "a statute of limitations begins to run at the moment a plaintiff's legally protected interest is invaded. This injury usually coincides with the tortious act." *DuBose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1028–29 (5th Cir. 1984). "Often, however, plaintiffs may be unaware that they have been injured, even though the tort has been completed. Courts thus developed the 'discovery rule' to mitigate the harshness of applying statutes of limitations strictly in cases involving medical malpractice, occupational diseases, and other types of latent injuries." *Id.* at 1029. The Supreme Court provided guidance on the discovery rule in *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352 (1979). In *Kubrick*, the Supreme Court rejected the argument that a claim does not accrue until the plaintiff learns or forms a reasonable opinion that he has been wronged. 444 U.S. at 118, 100 S. Ct. at 358. The Court stated that where the plaintiff discovered the fact of his injury or its cause sometime after the injury took place, he benefits from a later accrual date; but where he merely learned of his legal rights sometime after his injury, he does not receive that benefit. *Id.* at 118–22, 100 S. Ct. at 357–59; *see also Ramming*, 281 F.3d at 162

No. 12-50629

("A cause of action under federal law accrues within the meaning of § 2401(b) when the plaintiff knows or has reason to know of the injury which is the basis of the action," which point in time is determined by ascertaining both "[t]he existence of the injury" and "causation, that is, the connection between the injury and the defendant's actions." (internal quotations and citations omitted)); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011) (stating that under the discovery rule, "a claim accrues when a plaintiff knows both her injury and its cause").

The Ortegas argue that their claims could not have accrued until May 15, 2009, at the earliest because that is when they learned, through the Government's FOIA response, that Mr. Ortega's removal was conducted without a valid removal order. We disagree. This was not the case of a latent injury. *See DuBose*, 729 F.2d at 1029. The Ortegas knew that they had suffered injuries immediately after Mr. Ortega's arrest and deportation on May 28, 2008, and they knew that those injuries were caused by federal agents. These constitute the sort of facts that we consider "the critical facts of [a plaintiff's] injury and its cause," which establish accrual. *Id.* at 1030. In contrast, the facts that the Ortegas learned through the Government's FOIA response in May 2009 go to when the Ortegas overcame "ignorance of [their] legal rights," which are the sort of facts that do not establish accrual. *Kubrick*, 444 U.S. at 122, 100 S. Ct. 359.

On appeal, the Ortegas are careful not to aver that they merely learned at a later date that they had a cause of action. Instead, they argue that they did not discover that there was any injury *at all* until they learned that there had been no removal order against Mr. Ortega. In other words, the Ortegas attempt to define their "injury" by the *unlawfulness* of Mr. Ortega's deportation, rather than by the deportation *per se*. However, to define a tortious injury by the unlawfulness of the tortious act causing the injury is circular. For the reasons given above, the discovery rule is inapposite here.

No. 12-50629

III.

The district court did not err in dismissing the Ortegas' FTCA claims on the ground that they were time-barred under 28 U.S.C. § 2401(b). We therefore AFFIRM the district court's judgment.